IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CLEVELAND HOWARD,** | ) | |
| Petitioner, | ) | Civil Action No. 12-37 Erie |
| | ) | |
| v. | ) | **District Judge Sean J. McLaughlin** |
| | ) | **Magistrate Judge Susan Paradise Baxter** |
| **ARCHIE B. LONGLEY,** | ) | |
| Respondent. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

It is respectfully recommended that the petition for a writ of habeas corpus filed by Petitioner, Cleveland Howard, be denied.

**II.    REPORT**

Petitioner is a federal inmate who is incarcerated at the Federal Correctional Institution, McKean. He contends that the Bureau of Prisons (the "Bureau" or the "BOP"), which is the agency responsible for implementing and applying federal law concerning the computation of federal sentences, see, e.g., United States v. Wilson, 503 U.S. 329, 331 (1992), erred in computing his federal sentence.

    **A.    Relevant Background**

The relevant facts of this case are not in dispute. On December 1, 2004, Petitioner was arrested by local authorities in the state of Ohio and was held pursuant to state criminal charges for a robbery committed in Cincinnati. On January 27, 2005, the state court sentenced him to a term of imprisonment of three years for that robbery.

In May of 2005, a federal grand jury returned an indictment against Petitioner and eight co-defendants in the U.S. District Court for the Northern District of Ohio (hereinafter "the District Court"). At Counts 1, 3, and 5, the indictment charged Petitioner with conspiracy (interference with commerce by threats or violence), in violation of 18 U.S.C. § 371. Count 1 was regarding the Cincinnati robbery and Counts 3 and 5 were regarding robberies committed in Toledo and Indiana. The indictment also charged Petitioner with use of a firearm during the commission of a crime of violence, in violation of 18 U.S.C. § 924 (c)(1)(A) and 2 (Count 4).

Because state/local authorities had arrested Petitioner first, he was in the "primary custody" of the State of Ohio. The "primary custody" doctrine developed to provide different sovereigns (in this case the state and the federal governments) with an orderly method by which to prosecute and incarcerate an individual who has violated each sovereign's laws. Ponzi v. Fessenden, 258 U.S. 254 (1922). See, e.g., Bowman v. Wilson, 672 F.2d 1145, 1153-54 (3d Cir. 1982); George v. Longley, 463 F.App'x 136, 138 n.4 (3d Cir. 2012). In relevant part, the doctrine provides that the sovereign that first arrests an individual has primary custody over him. That sovereign's claim over the individual has priority over all other sovereigns that subsequently arrest him. The sovereign with primary custody is entitled to have the individual serve a sentence it imposes before he serves a sentence imposed by any other jurisdiction, regardless of the chronological order of sentence imposition. See, e.g., Bowman, 672 F.2d at 1153-54. Primary custody remains vested in the sovereign that first arrests the individual until it relinquishes its priority by, *e.g.*, granting bail, dismissal of charges, or parole release. George, 463 F.App'x at 138 n.4. Custody also can expire at the end of a sentence. Id.

In July of 2005, the District Court issued a writ of habeas corpus *ad prosequendum* so that Petitioner could appear before it to answer his federal charges. A prisoner detained pursuant to a writ of habeas corpus *ad prosequendum* remains in the primary custody of the sending sovereign unless and

2

until it relinquishes jurisdiction over him. See, e.g., Ruggiano v. Reish, 307 F.3d 121, 125 n.1 (3d Cir. 2002). The receiving sovereign – in this case, the federal government – is, therefore, considered simply to be "borrowing" the prisoner from the sending sovereign for the purposes of indicting, arraigning, trying, and sentencing him. Id.

On October 14, 2005, Petitioner pleaded guilty to Counts 1, 3, 4 and 5 of the indictment pursuant to a Rule 11(c)(1)(C) plea agreement in which he stipulated that he would "enter his pleas of guilty" and cooperate with the government in the prosecution of its case. The plea agreement provided that:

> In exchange for such pleas and cooperation *the parties agree that defendant will receive a specific sentence of 17 years imprisonment* to be followed by a 5 year term of supervised release[.]

Petitioner's Plea Agreement at 2, ECF No. 161 in United States v. Howard, Case No. 1:05-cr-245 (N.D. Oh.) (emphasis added) (available on PACER).

Petitioner's sentencing hearing was held on January 11, 2006. During the hearing, the following was stated:

> **Prosecutor:** Your Honor, the plea agreement contemplates by agreement of the parties a 17-year term of imprisonment. The Government's intent in that is the Defendant is currently serving a three year term for the Cincinnati robbery with the state system.
>
> The Government's intent was to put this Defendant in parity with [his co-defendant] Mr. Ramsey, who is serving a 20-year term in New York, so the total sentence between the federal and state system would be approximately 20 years. The Defendant still has, I believe, in the neighborhood of six months to a year, and that's a reasonable assessment, I believe, left in his sentence in the state system.
> - - -
> Count 1, which is the Cincinnati robbery, the Government's position is that it should run concurrent to Count 3 and 5.… Count 1 cannot run concurrent with Count 4, which is the 924(c).
>
> The reason the Government is recommending that is so there is minimal effect on the sentencing as a result of the fact that the Defendant is already serving a sentence in state court. However, the Government would move for a 60-month sentence for Counts 3 and a 60-month sentence to Count 5 consecutive to each other and 924(c) consecutive to

3

> … those for a total of 120 months for the non 924(c) and an additional seven years for the 924(c), which would be a total of 17 years in compliance with our agreement.
>
> - - -
>
> The intent, your Honor, is the Government, in fairness to the Defendant, is trying to minimize the impact of the Cincinnati conviction because he is already serving a state sentence for the same criminal act.
>
> Although it is a different charge, he is charged here and pled to a conspiracy where there he pled to an aggravated robbery. So they are different charges. There is no issue regarding that, but because he accepted responsibility for that count, in fairness to the Defendant, we are trying to alleviate any additional sentencing resulting from that particular robbery.
>
> - - -
>
> **Defense Counsel:** [Petitioner] understands that pursuant to that plea agreement with the Government that he is looking at 17 years…. [T]here is a plea agreement in effect. And he understands that he has to live up to those terms.

1/11/06 Sentencing Hr'g Tr. at 11-15, ECF No. 246 in United States v. Howard, Case No. 1:05-cr-245 (N.D. Oh.) (available on PACER).

The District Court accepted the parties' agreement and imposed Petitioner's sentence orally at the hearing as follows:

> Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the Defendant, Cleveland Howard, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 60 months on Counts 1 and 3 to run concurrent and 60 months on Count 5 to run consecutive to the sentence on Counts 1 and 3 and 84 months on Count 4 to run consecutive to all other sentences imposed.

Id. at 27-28. Thus, the total term of imprisonment imposed by the District Court was 204 months, or 17 years.

Near the end of the hearing, defense counsel asked the District Court whether Petitioner's federal sentence would run "concurrent with his state time?" Id. at 31. The District Court replied:

> **The Court:** I have no problem with doing that. I will run his sentence concurrent with the state sentence, and that means he will get less time overall than he would be facing. I have just sentenced him to 120 months plus 84 months, so that's ten years plus 7. That's 17 years, right? And if he has – how much more time to serve in state?
>
> **Defense Counsel:** Approximately 11 months.

4

> **The Court:** So he will get credit for that 11 months, so it will get him down to 16 years, 15 years and some time, and I will run that concurrent with the state sentence.
>
> **Defense Counsel:** All right. Thank you, your Honor.

Id. at 31-32.

The District Court's subsequent Judgment and Commitment Order sets forth his sentence as follows:

> The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of <u>204 months</u>. (On Counts 1, 3, and 5: 60 months in each count, with counts 3 and 5 to be served consecutively to each other, count 1 to be served concurrently with sentence in counts 3 and 5 – total 120 months; on count 4: 84 months, consecutive to sentences imposed in counts 1, 3, and 5 for a total of 204 months)
>
> The court makes the following recommendations to the Bureau of Prisons: Sentence in this case on counts 1, 3, and 5 to be served concurrent with the defendant's imprisonment under any previous state sentence. Sentence on count 4 shall be served consecutively at all sentences.

[ECF No. 13-6 at 3, Judgment and Commitment Order at 2].

After his federal sentencing hearing, the USMS returned Petitioner to state authorities in satisfaction of the federal writ of habeas corpus *ad prosequendum*. He remained in state custody at a state penitentiary until December 12, 2006, when state authorities paroled him and released him to the USMS for service of his federal sentence.

The BOP computed Petitioner's federal sentence to have commenced on the date it was imposed (January 11, 2006) pursuant to 18 U.S.C. § 3585(a). It also determined that Petitioner was entitled to 1 day of pre-commencement credit (commonly known as "prior custody credit") under 18 U.S.C. § 3585(b). That credit is for the time that he served on July 8, 2003, that was not credited toward the service of another sentence. The BOP further determined that Petitioner was entitled to 57 days of credit

5

pursuant to Willis v. United States, 438 F.2d 923 (5th Cir. 1971). [ECF No. 13-11 at 3-4]. Petitioner's projected release day is currently set at September 5, 2020.

In this habeas action, Petitioner challenges the BOP's sentence calculation and contends that he is entitled to credit against his federal sentence for <u>all</u> of the time he served on his state sentence. This Court has jurisdiction pursuant to 28 U.S.C. § 2241 over a claim by a federal prisoner that the BOP is computing his federal sentence improperly. See infra § II.B.1. Respondent has filed his Answer [ECF No. 13] to which Petitioner has filed a Reply [ECF No. 14].

### B. Discussion

A federal habeas court may only extend a writ of habeas corpus to a federal inmate if he demonstrates that "[h]e is in custody in violation of the Constitution or laws of the United States[.]" 28 U.S.C. § 2241(c)(3). The following federal statutes are relevant to the evaluation of the petition: 18 U.S.C. § 3585(a), which governs the date upon which a federal sentence commences; and, 18 U.S.C. § 3585(b), which governs the amount of sentencing credit that an inmate may receive for time served in official detention prior to the commencement of his federal sentence. The BOP's policies regarding sentence computation are set forth in Program Statement 5880.28, Sentence Computation Manual ("PS 5880.28"). Also relevant to this case is Program Statement 5160.05, Designation of State Institution for Service of Federal Sentence ("PS 5160.05").[1]

---

[1] BOP Program Statements are internal agency guidelines, and in many cases the policies set forth therein are "akin to an interpretive rule." Reno v. Koray, 515 U.S. 50, 61 (1995). The BOP policies at issue in this case are contained in a Program Statement and are not also published in any federal regulation, and thus are not subject to public notice and comment before adoption. Therefore, they are not entitled to the deference described in Chevron U.S.A. v. National Resources Defense Council, 467 U.S. 837 (1984). They are, however, entitled to "some deference" from this Court so long as they set forth "a permissible construction of" the statutes at issue. Blood v. Bledsoe, 648 F.3d 203, 208 (3d Cir. 2011), cert. denied, 132 S.Ct. 1068 (2012).

6

### 1. Calculation of the date upon which a federal sentence commences under 18 U.S.C. § 3585(a)

Section 3585(a) governs the date a federal sentence commences. It provides:

(a) Commencement of sentence. – A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

18 U.S.C. § 3585(a).

The BOP, and not the federal sentencing court, determines the date upon which a federal sentence commences. See, e.g., Ruggiano, 307 F.3d at 126. Because the statute provides that a sentence commences when an inmate is produced or received *for service of his federal sentence*, the BOP will not commence a sentence earlier than the date it is imposed, even if made concurrent with a sentence already being served. [ECF No. 13-2 at 4-5]. See also PS 5880.28, Chapt. 1, Page 13; United States v. LaBeille-Soto, 163 F.3d 93, 98 (2nd Cir. 1998) ("We see nothing in [§ 3585(a)] to indicate that the court is permitted to order that the sentence be deemed to have commenced on an earlier date. Indeed, the determination of the precise date on which a sentence begins appears to have been intended to be a ministerial decision that depends on the timing of the defendant's arrival at the appropriate place with respect to the sentence that is to be served, and we have held that after a defendant is sentenced, it falls to the BOP, not the district judge, to determine when a sentence is deemed to commence[.]") (internal quotations and brackets omitted).

When an inmate is only facing service of a federal sentence, the application of § 3585(a) is straightforward. The BOP will designate the inmate to a federal detention facility and it will calculate the federal sentence to have commenced on the date it was imposed. PS 5880.28, Chapt. 1, Page 12. Oftentimes, however, as in the instant case, an inmate is subject to multiple sentences, *e.g.*, at the time his federal sentence is imposed he is or will soon be subject to a state sentence. In that case, the federal

and state governments must resolve where and/or in what order the inmate will serve his multiple sentences. As previously discussed, at common law the "primary custody" doctrine developed to assist the sovereigns in making these determinations and to provide an orderly method by which to prosecute and incarcerate an individual that violated the law of more than one sovereign. Once again, the primary custody doctrine provides that the sovereign that first arrests an individual has primary custody over him. That sovereign's claim over the individual has priority over all other sovereigns that subsequently arrest him. The sovereign with primary custody is entitled to have the individual serve a sentence it imposes before he serves a sentence imposed by any other jurisdiction. See, e.g., Bowman, 672 F.2d at 1153-54. Primary custody remains vested in the sovereign that first arrests the individual until it relinquishes its priority by, *e.g.*, granting bail, dismissing the charges, releasing the individual to parole or at the expiration of his sentence. See, e.g., George, 463 F.App'x at 138 n.4.

The BOP has incorporated the common law primary custody doctrine into its policies. Thus, if the federal government has primary custody of an inmate on the date his federal sentence is imposed, it is entitled to have that inmate serve his federal sentence upon imposition. In such a case, the BOP will designate the inmate to a federal detention facility for service of the federal sentence and will calculate that sentence to have commenced on the date the federal sentencing court imposed it, even if at that same time the inmate is serving a concurrent state sentence. PS 5880.28, Chapt. 1, Pages 12-13.

If an inmate is in the primary custody of the state when his federal sentence is imposed and if his federal sentence is *consecutive to* any state sentence, the inmate will be returned to the state after federal sentencing. *The BOP will commence the inmate's federal sentence under § 3585(a) when the state relinquishes its priority and releases him to federal custody.* PS 5880.28, Chapt. 1, Pages 12-13, 31-33; see also PS 5160.05, Pages 2-12. If, however, the inmate is in the primary custody of the state and the federal sentencing court orders that he serve his federal sentence *concurrently* with any state sentence,

8

the BOP will return custody of the inmate to the state, *designate the state facility as the place of service of the federal sentence pursuant to its authority under 18 U.S.C. § 3621(b), and calculate his federal sentence to have commenced on the date the federal court imposed it*. PS 5880.28, Chapt. 1, Page 13, 32A-33; PS 5160.05, Pages 2-12.

The record before this Court establishes that on the date the District Court imposed Petitioner's sentence (January 11, 2006): (1) he was in primary state custody and "on loan" to federal authorities pursuant to a writ of habeas corpus *ad prosequendum*; and, (2) while on loan to federal authorities he was serving his state undischarged term of imprisonment. [ECF No. 13-2 at 3-4]. Because the District Court directed that Petitioner's federal sentence be served concurrent with his state sentence, the BOP, in accordance with its policies and procedures, designated the state facility where Petitioner was serving his state sentence as the official detention facility at which he commenced service of his federal sentence so that it could compute his federal sentence to have commenced on January 11, 2006 – the date the District Court imposed it. PS 5880.28, Chapt. 1, Page 13, 32A-33; PS 5160.05, Pages 2-12. *The BOP thus commenced Petitioner's sentence on the earliest date that it could commence.*

The District Court was correct when it informed Petitioner at his sentencing hearing that, because it was imposing his federal sentence to be served concurrent with his state sentence, he would "get credit" against his federal sentence for the approximately "11 months" he had left to serve on his state sentence. He did, since the BOP has calculated his federal sentence to have commenced on the date of imposition (January 11, 2006), and not on the date the state relinquished its priority and released him to federal custody 11 months and 5 days later (December 12, 2006). As explained above, if the District Court had ordered that Petitioner's federal sentence be served *consecutive* to his state sentence, the BOP would have calculated his federal sentence to have commenced on December 12, 2006. PS 5880.28, Chapt. 1, Pages 12-13, 31-33; see also PS 5160.05, Pages 2-12.

9

### 2. Calculation of whether Petitioner is entitled to credit for any time he spent in official detention prior to the date his federal sentence commenced

Section 3585(b) provides:

A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences –

(1)  as a result of the offense for which the sentence was imposed; or

(2)  as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

**That has not been credited against another sentence.**

(Emphasis added).

The intent of the last clause of § 3585(b) is to prohibit double sentencing credit situations. Wilson, 503 U.S. at 337 (explaining that with the enactment of § 3585(b), "Congress made it clear that a defendant could not receive a double credit for his detention time."). Thus, the BOP may not grant prior custody credit under § 3585(b) for time that has been credited against another sentence. See, e.g., Rios v. Wiley, 201 F.3d 257, 272 (3d Cir. 2001), *abrogated in part on other grounds by statute*; United States v. Vega, 493 F.3d 310, 314 (3d Cir. 2007).

The BOP has determined that Petitioner is entitled to only 1 day of credit (for time served on July 8, 2003) under § 3585(b) because all of the other time that he served in official detention during the relevant time period (that is, prior to January 11, 2006 (the date his federal sentence commenced)), was credited against his state sentence. [ECF No. 13-2 at 5]. Thus, the BOP is statutorily precluded from granting Petitioner any additional credit under § 3585(b) for time he spent in official detention prior to January 11, 2006. Rios, 201 F.3d at 271-76; Vega, 493 F.3d at 314 (the BOP did not err when it disallowed credit under § 3585(b) because the time at issue had been credited against the petitioner's state sentence).

10

The BOP did, however, award Petitioner 57 days of "qualified nonfederal presence credit" pursuant to its policies, which have incorporated the holding in Willis v. United States, 438 F.2d 923 (5th Cir.1971). Pursuant to Willis, the BOP will award sentencing credit when the following two conditions exist: (1) the non-federal and federal sentences are concurrent; and (2) the raw Effective Full Term ("EFT")[2] date of the nonfederal sentence is the same as or earlier than the raw EFT of the federal sentence. If these conditions exist, the time considered for treatment as Willis credit is the time spanning the date the federal offense conduct concluded until the date the first sentence commences, whether federal or nonfederal. In this case, the state raw EFT (three year term commencing January 27, 2005, for a state raw EFT of January 26, 2008) is earlier than the federal raw EFT (17 year sentence, commencing January 11, 2006, for a federal raw EFT of January 20, 2023). Therefore, Willis applied, and the BOP credited Petitioner's federal sentence for the 57 days he served in official detention from December 1, 2004 (the date Petitioner's federal offense concluded) through January 26, 2005 (the day before his state sentence commenced). [ECF No. 13-9 at 2]. Petitioner does not argue that he is entitled to additional qualified nonfederal presence credit.

### 3. Petitioner Is Not Entitled To Any Additional Sentencing Credit

Finally, Petitioner argues that the District Court erred in not applying U.S.S.G. § 5G1.3 and adjusting his term of imprisonment for time already served on his state sentence. This Court does not have jurisdiction to consider this claim. "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]" Cardona v. Bledsoe, 681 F.3d 533, 535 (3d Cir. 2012) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)). "Two federal statutes, 28 U.S.C. §§ 2241 & 2255, confer federal jurisdiction over habeas petitions filed by

---

[2]  The raw EFT is the full term date of a sentence without reference to prior custody credit or good conduct time.

11

federal inmates." Id. "The 'core' habeas corpus action is a prisoner challenging the authority of the entity detaining him to do so, usually on the ground that his predicate sentence or conviction is improper or invalid." McGee v. Martinez, 627 F.3d 933, 935 (3d Cir. 2010). That type of habeas action is brought before the district court that sentenced the prisoner by way of a motion filed under 28 U.S.C. § 2255, which permits a federal prisoner to challenge his judgment of sentence "upon the ground that [it] was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" In contrast, § 2241 "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence," McGee, 627 F.3d at 935, such as, for example, the way in which the BOP is computing his sentence. See, e.g., Barden v. Keohane, 921 F.2d 476, 478-79 (3d Cir. 1990). Such petitions are filed in the federal court of the judicial district where the federal prisoner is incarcerated.

Thus, this Court has jurisdiction under § 2241 to consider Petitioner's claims that the BOP has erred in carrying out his sentence. However, it does not have jurisdiction over his claim that the District Court erred in imposing it. Such a claim must be raised on direct appeal or, perhaps, in a § 2255 motion within a claim of ineffective assistance of counsel.

The Court recognizes that on rare occasions it is possible for federal prisoners to attack their convictions, and perhaps their sentences, pursuant to § 2241, as opposed to § 2255. See, e.g., Brian R. Means, FEDERAL HABEAS MANUAL § 1:29 (June 2012). Section 2255, in what is commonly referred to as its "savings clause" or "safety valve," provides that "[a]n application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to [§ 2255], shall not be entertained if it appears that the applicant has failed to apply for relief by motion [to vacate sentence pursuant to § 2255], to the court which sentenced him, or that such court has denied him relief, *unless it*

12

*appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.*" 28 U.S.C. § 2255(e) (emphasis added). Thus, a § 2241 petition attacking custody resulting from a federally-imposed judgment of sentence may be entertained if the petitioner establishes that the § 2255 remedy is "inadequate or ineffective."

Petitioner contends in his Reply that § 2255's remedy is "inadequate or ineffective." In the Third Circuit, the seminal case on the application of § 2255's savings clause is In re Dorsainvil, 119 F.3d 245 (3d Cir. 1997). In that case, the Third Circuit Court held that the "safety valve" provided under § 2255 is extremely narrow and applies in the "uncommon situation" in which "a prisoner who had no earlier opportunity to challenge his conviction for a crime that an intervening change in substantive law may negate[.]" Dorsainvil, 119 F.3d at 248, 251. "Put another way," under the narrow holding of Dorsainvil, "§ 2255 is inadequate and ineffective to test the legality of a conviction when: (1) at the time of conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 [regarding the filing of a successive motion] because the new rule is not one of constitutional law." Trenkler v. Pugh, 83 F.App'x 468, 470 (3d Cir. 2003). The Third Circuit Court has noted that "we do not foreclose the possibility that Dorsainvil could be applied to a petitioner who can show that his or her sentence would have been lower but for a change in substantive law made after exhaustion of the petitioner's direct and collateral appeals under § 2255." Pollard v. Yost, 406 F.App'x 635, 638 (3d Cir. 2011).

Petitioner's case does not meet the Dorsainvil criteria. He also relies upon United States v. Ross, 219 F.3d 593 (7th Cir. 2000) and United States v. Descally, 254 F.3d 133 (11th Cir. 2001) to support his contention that the District Court erred in not applying a downward departure under § 5G1.3. Both of

those cases were decided by courts of appeals on direct review and have no applicability to this habeas case.

### III.     CONCLUSION

For the foregoing reasons, it is respectfully recommended that that the petition for a writ of habeas corpus be denied.[3]

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties must seek review by the district court by filing objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to do so will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated:  February 4, 2013

cc:     The Honorable Sean J. McLaughlin
        United States District Judge

---

[3]     Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253 (as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Federal prisoner appeals from the denial of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000); 28 U.S.C. § 2253(c)(1)(B). Therefore, no recommendation regarding a certificate of appealability is made.